[Civ. No. 7725. First Appellate District, Division Two.—March 9, 1931.]

WILLIAM GOATMAN, Appellant, v. PACIFIC READY-CUT HOMES INC. (a Corporation) et al., Respondents.

L. C. Woods for Appellant.

Andrew J. Copp, Jr., for Respondents.

PARKER, J., *pro tem.*—The action results from a disagreement between the parties over the construction of the terms of a certain bond executed by defendant Pacific Ready-Cut Homes, as principal, and defendant Standard Accident Insurance Company, as surety, and plaintiff as obligee.

There is little, if any, dispute as to the facts and the due execution and delivery of the bond. The defendant Pacific Ready-Cut Homes Company, hereinafter called the builder, had entered into an agreement with one Lawrence Law by the terms of which the said company was to build upon a certain lot a building described as of the double stucco type. The said Lawrence Law was the owner of the lot upon which the said building was to be erected. After the work of construction had commenced the said Law applied to the plaintiff Goatman for a loan, offering as security a mortgage on the lot together with the building to be erected. Plaintiff was willing to make the loan, as requested, but desired some further assurance or protection to the end that there would be no delay, cessation or abandonment of the work of construction. Accordingly Goatman approached the builder and explained his situation and what he desired in the way of assurance of completion. Thereupon the matter of the bond was taken up and agreed upon as being the means of obtaining the end desired. Several forms of bond, at least three, were suggested and prepared, the third being the one found satisfactory and accepted. Before coming to the bond itself, and its terms, we might note the circumstances surrounding its delivery. No suggestion of fraud or mistake enters into the case. The plaintiff testifies that he accepted the bond and that he was satisfied with its terms and that, whatever is in the bond, he was, at the time of trial, still satisfied. This much, preliminarily, to indicate that the question to be determined narrows itself down to a construction of the terms of the bond and the liabilities arising therefrom.

Without detailing the facts which give to plaintiff a cause of action predicated upon the bond, it will suffice to say that if the construction contended for by defendants and placed on the bond in the court below is the correct construction, then any further questions are immaterial. Continuing

with the facts, it appears that the builder proceeded in the construction of the building. However, before the building was completed and at a stage far from completion it developed that Lawrence Law was a fugitive from justice and he was taken into custody by local police authority. That thereupon Law defaulted in the terms of the building contract and abandoned the same entirely. Likewise the builder abandoned further construction and its activities in that connection terminated. Plaintiff Goatman thereupon ·sought foreclosure and after carrying this proceeding to a sale found the returns inadequate to satisfy the mortgage and hence this action to recover on the bond.

The bond in dispute may now be considered. Under the terms thereof the principal and the surety are firmly bound unto the plaintiff in the sum of $5,600 and the condition of the bond is recited as follows: ''Whereas the above bounden Principal has entered into a certain written contract with L. Law dated February 28th, 1924, for the construction of a double stucco dwelling—four rooms to the side situate 7240–44 Hughes Ave., Los Angeles, California, which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein. Now therefore the condition of the above obligation is such, that if the above bounden Principal shall well and truly keep, do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named obligee all loss and damage said obliged may sustain by failure or default on the part of said Principal, then this obligation shall be void; otherwise to be and remain in full force and effect.'' The contention of the appellant is that the condition of this bond bound the builder to erect the building in question, irrespective of what the co-contracting Law might do or fail to do. In other words, that irrespective of any contract between Law and the builder the latter were bounden to the plaintiff to carry the building to completion. We cannot so interpret the obligation. It was, no doubt, the desire and demand of plaintiff that he be protected to an extent that would preclude Law absconding or abandoning the contract. This could easily have been ac-

complished by plaintiff taking over the contract in his own name and instead of advancing the money to Law he could have withheld the same to be disbursed by himself as the building progressed. This he did not deem necessary. He went to the builder and required from him a bond and surety to the effect, not that the builder would complete the construction of a building upon the lot, but that the builder would comply in every respect with the terms of the contract between the said builder and Law. The bond incorporated in full the contract between the builder and Law and limited the condition of the bond to that contract to the end that if the builder should well and truly keep, do, and perform each and every, all and singular, the matters *in said contract* set forth and specified by the said principal to be done and performed at the time and in the manner in said *contract* specified, etc., then the obligation should be void. No matter how the words employed are construed or what liberality of construction may be indulged we find ourselves tied to the limitations of the building contract.

There is no dispute and the trial court found that the builder fully performed in as far as it owed any duty to perform under the contract. The fact is, as found, that upon amply sufficient grounds the contract was rescinded by the builder and further performance excused. The trial court did expressly find as a matter of fact that the builder was excused from further performance; and (from other facts found upon sufficient evidence, not questioned here) it was the trial court's conclusion of law, that performance was excused. We fail to find express authority covering any bond of the kind here before us. It is distinctly a private bond as distinguished from any undertaking provided for by statute. Parties have the right to contract in any legal manner desired and there is nothing in a bond of this character that renders it unenforceable. However, there are many general principles applicable alike to any and all forms of undertakings. In bonds and undertakings, as in other forms of contract, the duty of performance is limited to the terms of the contract. Indeed, it may be said that in the case of bonds and undertakings the rule is more strictly enforced. The doctrine is announced in the case of *W. P. Fuller & Co.* v. *Alturas S. Dist.*, 28 Cal. App. 609, 612 [153 Pac. 743, 745], as follows: "It is elementary that

'sureties are never bound beyond the strict letter of their contract; that they have the right to stand upon the precise terms of their agreement; and that there is no authority for extending their liability beyond the stipulation to which they have chosen to bind themselves'.'' We may concede that this rule might relax in the face of compelling equities or that the appearance of fraud, misrepresentation, or undue advantage might compel such a construction as would meet the requirements of an even justice. None of these elements appears here.

It is true, likewise, that where a bond or undertaking is a requirement of the law in order to give security against potential or threatened loss, the bond or undertaking would be construed with the purpose thereof always in mind and the language employed would be subordinated to the result contemplated by the law. Again, this feature does not present itself here.

Surveying the situation it is apparent that the plaintiff had, within his own means, ample protection against any loss. The money he was to advance to Law was only to be advanced upon the security of the lot and the completed building and the purpose of the advancement was to complete the construction of the said building. The plaintiff was in complete control of the funds to be advanced and all that he need do for complete protection was to have himself taken over the contract of Law and paid the sum direct to the builder as the building progressed. When he chose to advance the money to Law, regardless of the latter's use thereof and to accept as his protection the guarantee of the defendants that the contract would be performed on their behalf, it was at his own risk. It may here be noted that when the builder contracted with Law it took a trust deed upon the property as security for the performance of the contract on the part of Law. When plaintiff became the lender then the defendants relinquished, for the purposes of the loan, its trust deed, and subordinated its claim of lien to the mortgage given by Law to the plaintiff. Thus it will be seen that the builder was at the complete mercy of plaintiff and Law with no assurance of protection other than that the advancements made by plaintiff to Law would be applied on the contract. Under these conditions there is no compelling equity demanding that the builder should be in

the position of furnishing a building to plaintiff without payment, which would be the result of a construction of the bond such as plaintiff is contending for.

Therefore, we hold that the bond and undertaking in question, construed according to the terms thereof, absolved the builder from any liability upon compliance with the terms of its contract with Law, and that this contract had been fully complied with as far as the builder could be, or was, compelled to perform under the law. Accordingly, plaintiff cannot recover against the builder under the bond. As authority for the conclusion that the builder was excused from any further performance under the contract we cite the following out of hundreds of cases to the same effect: *Ross* v. *Tabor*, 53 Cal. App. 605 [200 Pac. 971]; *Porter* v. *Arrowhead Reservoir Co.*, 100 Cal. 500 [35 Pac. 146]; *Minaker* v. *California Canneries Co.*, 138 Cal. 239 [71 Pac. 110]. ■ It requires but little citation to support the rule that where the principal is discharged the surety likewise escapes liability. (*Stockton etc. Soc.* v. *Giddings*, 96 Cal. 84 [31 Am. St. Rep. 181, 21 L. R. A. 406, 30 Pac. 1016]; *Holden* v. *Mensinger*, 175 Cal. 300 [165 Pac. 950]; Civ. Code, secs. 2809, 2836; *San Francisco T. Seminary* v. *Monterey County G. & E. Co.*, 179 Cal. 166 [175 Pac. 693].)

The judgment is affirmed.

Sturtevant, J., and Spence, Acting P. J., concurred.